## CASE v. TOWLE and others.

Where a will directs an executor to invest a large personal estate, given ultimately to four legatees on their becoming of age, and out of the interest to pay their support and maintenance, sundry small legacies, and an annuity of $100 during their pleasure, with power to increase it in the discretion of the executor; and the executor after paying the annuity without increase for twelve years, divided the estate, appropriating $10,000 as a fund for the payment of the annuity, and a legacy of $500 and the support of that legatee which was charged on the estate during minority; and then divided the residue:

It was *held*, that this act was an exercise of the discretion of the executor, so far as to limit the future increase of the annuity to the clear remaining income of the

(a) The parties subsequently agreed upon the corrections to the master's report, and a decree was entered accordingly.

fund set apart after defraying the other charges upon it; and neither a subsequent administrator or the court acting upon the fund, could increase the allowance beyond that limit.

February 4; March 25, 1845.

John Abeel who died in 1811, by his last will and testament, gave almost his entire estate to his niece Julia H. Brasher, who afterwards became the wife of R. D. Weeks, Isabella A. Howell, who afterwards became the wife of George Case, and Jane A. and Mary A. Howell, children of Phebe Howell, with a limitation over to the survivors on the death of either without issue. He gave to Phebe Howell an annuity of $100 during the pleasure of his executors or the survivor of them, with power to increase it in their discretion. By a codicil he gave $500 to a child of which Phebe H. was then *enciente*, in case it lived to become of full age. This child when born was named John H. Abeel.

The testator directed his personal estate to be invested, and the executors out of the interest, were to pay some pecuniary legacies, the annuity to Phebe H., and maintain and educate her expected issue and the four principal residuary legatees; and their respective portions were to be paid to them as they severally came to the age of twenty-one years.

Mrs. Weeks became of age in May, 1823, upon which Garret B. Abeel, the acting executor, set apart $10,000 of the personal property, as a fund to provide for the support of Phebe Howell and her son, and the payment of the legacy to the latter. And he then distributed the residue, or what he deemed to be such, from time to time, among the four principal legatees.

In February, 1827, Mr. Case and his wife filed a bill for an account against the executors, to which all the persons before named were parties. The decision of the Chancellor in that suit is reported in 1 Paige, 393. By the decree then made, the appropriation of the $10,000 was recognized; and the general expenses of the estate as well as the support of Mrs. Howell and her son and his legacy, were charged upon that fund from the time it was set apart. When the master made his report in that suit, the fund was $9359 43.

Jane A. Howell, now the wife of J. Towle, became the administratrix of John Abeel on the death of his surviving executor.

The fund when it came to her hands was $9114 78, and the legacy of $500 was paid out of it to John H. Abeel when he becam: of age in 1832.

Up to this time there had been no increase in the allowance to Mrs. Howell, but she had received her annuity of $100 from the testator's death.  She was maintained after this until her death in the summer of 1843, by Towle and wife.

On the 5th of October, 1838, Mr. Case and his daughter Mary J. filed the bill in this cause, to have the remaining fund ascertained and secured.  Mrs. Case had died prior to that date, and her daughter and only child died while the suit was pending.

The cause came on before Assistant Vice-Chancellor Hoffman, who on the 23d day of December, 1841, made a decree to the effect that Mr. Case and his daughter, and Mrs. Weeks were entitled respectively to one-fourth of the fund subject to the charges upon it, and directing Towle and wife to bring those two-fourth parts into court.  The decree also directed a reference to inquire whether Mrs. Howell since January 1, 1831, had been entitled to an increase of her annuity, and if so to what extent; and what amount Towle and wife had paid to or expended for her.

On the reference, Towle and wife claimed that Mrs. Howell was entitled to a large increase of the allowance in her declining years, and offered to prove that they had actually and necessarily paid to and expended for her support from 1830 till her death, more than the whole fund which Mrs. Towle received as administratrix, both principal and interest.

On the other hand, it was insisted that the administratrix had no power to increase Mrs. Howell's allowance, that the executor had restricted its utmost extent to the income of the fund in question, and that it was in effect limited to that income by the interlocutory decree.

The master thereupon by consent, made a special report asking the direction of the court, before going into the mass of testimony in regard to the actual support of Mrs. Howell.

Some other facts will be found stated in the opinion of the court.

*J. L. Mason*, for the complainant.

*N. D. Ellingwood,* for Towle and wife.

THE ASSISTANT VICE-CHANCELLOR.—The question presented by the special report of the master, was decided by my predecessor when this cause was before him in October, 1841.

His opinion then pronounced, was clear and emphatic, that in no event could the administratrix *de bonis non,* or even the original executor, encroach upon the capital of the reserved fund of $10,000, in order to enhance the yearly allowance to Mrs. Howell.

The decree which was thereupon entered, it is true, does not in express terms limit the master to the income of that fund, in his allowance for Mrs. Howell's support. But I think the provisions of the decree which require Mr. Towle to bring into court the two equal fourth parts of the capital of the fund, for the shares of the complainant and R. D. Weeks, and the positive adjudication that the complainant is entitled to the one-fourth part of the capital; are incompatible with the master's going beyond the income in his inquiry as to the proper extent of the allowance to the annuitant.

Such being the decision, and in my view, the decree, of my learned predecessor, I ought not to direct otherwise, unless upon a very strong conviction that he erred in his conclusion.

But I have no doubt of the correctness of his judgment upon this point.

The testator had a very moderate conception of the necessary extent of his bounty to Mrs. Howell. He fixed it in the first in stance at $100 a year, and the payment of that amount was purely discretionary with his executors. He authorized them to increase the yearly income to her, in case they should deem the increase expedient and necessary. Thus the whole thing rested in the discretion of the executors and the survivor of them.

In May, 1823, Mrs. Weeks became entitled to receive her portion of the estate, and the surviving executor proceeded to make a distribution accordingly. He had the experience of nearly twelve years administration of the estate, to guide him in his estimate for the future, and if I correctly understand the fact, he had not to that period, increased Mrs. Howell's annuity beyond $100, and

did not increase it while he lived. He then in the exercise of his judgment and discretion, set apart the sum of $10,000 in order to provide for the yearly payment to Mrs. Howell, the support of her son until he should attain his full age, and the payment of his legacy of $500.

It was clearly his design to provide a sum, *the income* of which would defray the annual charges thus payable.

The annuity of Mrs. Howell, and the support of her son, were charges which would recur yearly. The latter would continue about nine years, if he survived ; and the former for an indefinite period, dependent upon the duration of Mrs. Howell's life ; and which in fact continued for twenty years. No gross sum could have been set apart for these objects, with either safety or propriety.

The executor's subsequent management of the fund confirms this view of his intent. According to his account as passed by the master in *Case* v. *Abeel*, the fund of $10,000 remained unimpaired for five years after it was thus set apart ; and it was but slightly impaired while he retained it, and for aught that appears, the portion used was for general charges of the estate, which the Chancellor imposed upon it by his order dated April 9th, 1829. From a cursory examination of that account, I imagine that if no charges had been brought against the fund between 1823 and 1832, except the support of the son and the annuity of $100 to the mother, there would have been a surplus in 1832, sufficient to have paid the legacy of $500 to the son, and leaving the fund of $10,000 entire. The executor foresaw that in February, 1832, John H. Abeel would cease to draw upon the income for his support ; and that he could diminish the capital only $500 ; and the executor doubtless judged, that the income of the remaining capital, would in 1832 be more than Mrs. Howell could reasonably require, and the aggregate income after that period would suffice for any possible contingency in her support, for which the testator intended to provide.

It appears that the capital of the fund which remained after the payment of her son's legacy according to the executor's account, was $8614 78. This sum at six per cent. would yield for her support five times as much as the testator designated in his will ; and it cannot be doubted but the provision thus made by

the executor in 1823, was a wise and provident exercise of the discretion reposed in him by the testator, and ample for any reasonable increase of Mrs. Howell's annuity.

I think it was, as to the utmost latitude of the allowance to her, a conclusive exercise of the executor's discretion ; but I need not so decide.

The Chancellor, when this estate was before him in 1829, (*Case* v. *Abeel*, 1 Paige, 393, 403,) evidently regarded the $10,000 as a capital sum, the income of which was to be appropriated to Mrs. Howell and her son, so far as was necessary, and the principal to be divided among the residuary legatees of the estate.

The petition of Mr. and Mrs. Towle to the Chancellor in 1831, in which Mrs. Howell expressly concurred in writing, is a recognition of the act of the executor in setting apart the $10,000 as a capital sum, which under the circumstances ought to be deemed conclusive upon them. They speak of Mrs. Weeks's one-fourth part of that fund, as being yet unpaid to her; they allege that the annuity of $100 is insufficient for the support of Mrs. Howell, and they pray for a reference to ascertain how much she shall receive yearly in future for her support, and they also ask for a suitable allowance for past expenditures.

The Chancellor made an order of reference accordingly, which was never prosecuted by the petitioners or by Mrs. Howell.

They chose to rely upon the exercise of Mrs. Towle's discretion as administratrix in regard to the extent of the yearly allowance, in preference to obtaining the judgment and sanction of this court. Whether Mrs. Towle could exercise any discretion on the subject, I need not say. I am clear that she could not trench upon the limit which the executor had imposed in the income allotted for this object, and which she as well as her husband and mother, had recognized and virtually adopted in their application to the Chancellor. And certainly, their omission to proceed under the order of reference, was an acquiescence in that limitation, which they ought not at this day to be permitted to retract.

These considerations induce me to concur fully in the conclusion of Assistant Vice-Chancellor Hoffman. The master will therefore be advised that he is not to allow to Mr. and Mrs. Towle

any amount for Mrs. Howell's support, beyond the yearly income of the fund in question while she lived.